

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS
### AUSTIN

GROVER SELLERS

ATTORNEY GENERAL

Honorable Bert Ford, Administrator
Texas Liquor Control Board
Austin, Texas

Dear Mr. Ford:

Opinion No. O-7139

Re: Whether or not a club operated
under the described conditions
constitutes the operation of
an "open saloon".

You request our opinion upon the above-captioned sub-
ject matter, your letter being as follows:

"Will you please give me your valued opinion
as to whether or not a place operated in the man-
ner indicated below, where alcoholic beverages are
served, constitute the operation of an open saloon.

"The San Antonio Club, a corporation duly in-
corporated under the laws of the State of Texas, is
the lessee of approximately 1800 square feet of
space located on the third floor of the Gunter Hotel.

"This space was leased to the San Antonio Club
for a period of five years at an annual rental of
$5,000.00 per year. The premises were leased for
occupancy as a private club and the lessee agreed
to all public laws pertaining to the operation of
private clubs.

"The club comprises three rooms: a reading room,
a club room, and a dining room. The club is staffed
with stewards who are responsible for the general up-
keep of the club; and these two stewards are hired by
and their salaries are paid by the San Antonio Club.
Officers of the club and members of the club do not
receive any compensation.

"The Gunter Hotel services the dining room and
maintains waiters for both the luncheon and dinner.

"The club members pay the hotel regular room service prices, less ten per cent discount for food.

"The hotel waiters do not have access to the club room, or the reading room. Their activities being confined strictly to the dining room.

"There is a service bar in the club room for dispensing mixed drinks only to members and their guests.

"The bar is operated under what is known as the bar pool plan. Each of the seventy-five club members have on deposit in a separate fund $25.00 each, which makes a total of $1875.00. This money has been pooled together to purchase liquor for their personal use.

"Purchases of liquor for the club is made by the treasurer from the holder of a Retail Package Store Permit.

"In withdrawing liquor at the bar from this pool, each member uses a coupon book. Each coupon entitles the member to one drink.

"All liquor purchased for the club is placed on the back bar or is stored in a small room behind the bar.

"Club members obtain coupon books from the stewards.

"At the end of each month the club member is billed for the number of coupon books he has been issued.

"There are no guest cards for the San Antonio Club, and no non-member is allowed in the club room unless he is a guest of a member. No guest can obtain drinks from the bar, but a member may serve his or her guest a drink, using his or her coupon. No money at any time changes hands in the club room.

"Following are the house rules of the club:

Honorable Bert Ford - page 3

"1. No ladies permitted before 5 p. m.

"2. No unescorted ladies permitted at any time.

"3. Members required to limit their guests to four -- if more, contact the bar regarding service before arriving with the guests.

"4. No gambling with guests at any time.

"5. No poker allowed.

"6. Club open from 11 a.m. to 12 midnight.

"7. No slot machines or nickelodeons permitted on the premises.

"8. No long distance phone calls or wires permitted from house phones.

"9. No members or guests allowed behind the bar.

"10. Members cannot mix their own drinks.

"11. No member shall be permitted the privilege of bringing the same resident guest oftener than once a week.

"12. Drinks cannot be served to anyone other than a member, unless accompanied by a member.

"13. Members are not permitted to bring their own liquor.

"I wish to call to your attention the following provisions of the Texas Liquor Control Act:

"'section 3, (a) of Article I. The term "open saloon" as used in this Act, means any place where any alcoholic beverage whatever, manufactured in whole or in part by means of the process of distillation, or any liquor composed or compounded in part of distilled spirits, is sold or offered for sale

for beverage purposes by the drink or in broken or unsealed containers, or any place where any such liquors are sold or offered for sale for human consumption on the premises where sold.

"'Section 3, (b) of Article I. It shall be unlawful for any person, whether as principal, agent, or employee, to operate or assist in operating, or to be directly or indirectly interested in the operation of any open saloon in this state.'"

"I also wish to call to your attention Opinion No. 0-1145 approved by the Attorney General's Department on August 26, 1939. It is the contention of the San Antonio Club that Attorney General's Opinion No. 0-1145 does not cover this situation. The San Antonio Club further contends that the manner in which it operates does not violate Section 3, (a) of Article I."

Supplementing this letter, you further advise us as follows:

"In supplementing my letter of March 7, 1946, requesting an opinion on the operation of the San Antonio Club, a corporation duly incorporated under the laws of the State of Texas, this club operates on a coupon system whereby a member may secure a coupon book containing twenty (20) coupons, of which each coupon is worth fifty cents ($.50) each making the coupon book cost a total of $10.00.

"In each instance of where a member purchases a drink of whiskey, mixed or otherwise, it is necessary that the member and the club steward countersign each coupon. Each drink of whiskey, either mixed or otherwise, has a cost of fifty cents ($.50) regardless of the type drink purchased.

"The club member does not pay for his coupon books until the end of the month, at which time the secretary bills him for the number of coupon books that he has received during the month.

"The treasurer of the San Antonio Club purchases all liquors to be used by the club and payment for these liquors is made from the funds, which were originally set up as explained in my previous letter.

Honorable Bert Ford - page 5

"Moneys derived from the sale of coupon books
is placed in the fund at the end of each month."

In Opinion No. O-1145, a copy of which is attached
hereto, this department held that the liquor operations of
the Houston Country Club as set forth in that opinion, consti-
tuted the operation of an "open saloon". In this opinion, we
shall not review all of the authorities mentioned in that opin-
ion, but shall merely quote more fully some of the authorities
mentioned and apply the rules announced in that opinion to the
facts concerning the liquor operations of the San Antonio Club
as submitted by you.

Section 3(a) of the Texas Liquor Control Act reads
as follows:

"Section 3(a) of Article I. The term
'open saloon' as used in this Act, means any
place where any alcoholic beverage whatever,
manufactured in whole or in part by means of
the process of distillation, or any liquor
composed or compounded in part of distilled
spirits, is sold or offered for sale for bev-
erage purposes by the drink or in broken or
unsealed containers, or any place where any
such liquors are sold or offered for sale for
human consumption on the premises where sold."

Krnavek v. State, 41 S. W. 612 (Court of Criminal Ap-
peals), holds:

"The question here is whether the sale of
intoxicants by the managing steward or barkeep-
er of the club to one of the members of said
club is a sale. We are of the opinion that it
is. When the intoxicants were bought by the
steward, or any other member of the club, with
the funds of the club, they became the property
of the corporation, and a sale by the steward
of said corporation to any of its members was
a sale, as that term is defined. It was the
separation of the property of the club, and the
transfer of the same to an individual member,
for which he either paid the cash, or became re-
sponsible therefor. . . . This is not a case
where parties contribute sums of money and pur-
chase intoxicants therewith, and divide them

Honorable Bert Ford - page 6

pro rata among themselves; but it is a trans-
action where the common assets of a continuing
business are used to replenish the goods sold
in that business. . . ."

Adams v. State, 145 S. W. 940 (Court of Criminal
Appeals), holds:

"The questions presented for our considera-
tion are but two:  Did the transaction constitute
a sale within the meaning of our laws, and, . . . .
The evidence shows that the incorporated club pur-
chased liquors in bulk with money in the treasury,
and sold or dispensed the liquors to its members at
the usual or customary price. This we think con-
stitutes a sale under all the rules of law. If any
given number of persons organize an association un-
der any name whatsoever with the understanding and
agreement that such goods are to be dispensed to the
members in such quantities as each may desire at the
usual and customary price, the member paying only
for such quantity as he receives, such transaction
constitutes a sale by the association to the member."

Feige v. State, 95 S. W. 506 (Court of Criminal Ap-
peals), holds:

"In any event, according to our view, the club
members, when they paid their money into the treas-
ury, parted with it to the corporation, the corpora-
tion becoming the owner thereof; and when the cor-
poration sent out this money it bought the beer on
its own behalf in Ft. Worth, and if at any time the
corporation had failed and become subject to execu-
tion, the beer and property of the same could have
been seized for the debts of such corporation.  ..."

While all of the violations in the cases mentioned in
Opinion No. O-1145 and above occurred in dry areas, we believe
that the operation of an "open saloon", as that term is defined
above is prohibited in "wet areas" as well as "dry areas" of
this State.

We have carefully considered the facts stated by you,
and beg to advise it is the opinion of this department the facts
thus stated, if introduced in evidence, would be sufficient prima

Honorable Bert Ford - page 7

facie to authorize the submission of the case to a jury, if one were demanded, or to call for a decision upon the merits by the court in the absence of a jury, but that such facts would not by any means be conclusive one way or the other. In other words, a trial court hearing such case, where the pertinent facts would in all probability come from the testimony of interested witnesses, would not be justified in withdrawing the case from a jury and deciding it as a matter of law, since there would be involved such fact matters as credibility of witnesses, weight of the testimony, inferences and deductions from the facts proven, and in short, circumstantial evidence from which a jury could properly find that an open saloon was being operated in violation of law.

The recent case of *State v. Abbott Loan Service et al*, 195 S. W. (2) 416 is very much in point with respect to what we have just said. There the trial court gave an instructed verdict for the defendant Loan Service in an injunction suit under the Usury Act, where the evidence offered by the State was circumstantial, involving very similar issues to those involved in your inquiry.

We are not, of course, deciding the case as matter of law one way or the other. We are merely holding that such evidence would make a prima facie case from which a jury might properly find for the State, and such finding, we think, would be supported by the courts.

Very truly yours

ATTORNEY GENERAL OF TEXAS

BY

Ocie Speer
ASSISTANT

APPROVED DEC 20 1946

GENERAL OF TEXAS

OS-MR

Enclosure